**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MALIBU MEDIA, LLC,

      Plaintiff,                                        Hon.  Robert J. Jonker

v.                                                             Case No.: 1:13-cv-350

JOHN DOE, subscriber assigned IP
Address 107.5.177.74,

      Defendant.

| NICOLETTI & ASSOCIATES, PLLC | THE MEISNER LAW GROUP, P.C. |
|---|---|
| PAUL J. NICOLETTI  (P44419) | DANIEL P. FEINBERG (P38356) |
| Attorneys for Plaintiff | Attorneys for Defendant |
| 36880 Woodward Ave., Suite 100 | 30200 Telegraph Road, Suite 467 |
| Bloomfield Hills, MI  48304 | Bingham Farms, MI  48025 |
| (248) 203-7800 | (248) 644-4433 |
| paul@nicoletti-associates.com | dfeinberg@meisner-law.com |

**BRIEF IN SUPPORT OF
DEFENDANT'S MOTION TO QUASH SUBPOENA**

**CONCISE STATEMENT OF ISSUES PRESENTED**

    I.    WHETHER PLAINTIFF HAS TO MAKE A CONCRETE SHOWING OF A PRIMA FACIE CLAIM OF COPYRIGHT INFRINGEMENT.

        a.    WHETHER OBSCENE MATERIAL IS COPYRIGHTABLE.

        b.    WHETHER PLAINTIFF HAS MADE A CONCRETE SHOWING THAT DEFENDANT INFRINGED PLAINTIFF'S PURPORTED COPYRIGHTS.

    II.    WHETHER THE SUBPOENA IS INVALID ON ITS FACE.

## **CONTROLLING AUTHORITIES**

Issue I.a. is controlled by U.S. Const. Art. I, § 8, cl. 8; 17 U.S.C. § 101, et seq.; and *Feist Publ'ns, Inc v Rural Tel Serv Co,* 499 U.S. 340; 111 S.Ct. 1282; 113 L.Ed.2d 358 (1991).

Issue I.b. is controlled by *In re BitTorrent Adult Film Copyright Infringement Cases*, Civil Action Nos. 11–3995, 12–1147, 12–1150, and 12–1154; 2012 WL 1570765, 3-4 (ED NY,2012).

Issue II. is controlled by FRCP 45 and *Battle v Chicago Cycle, Inc*, No. 1:11MC61; 2012 WL 5500507, 4 (ND Ohio,2012).

**FACTS**

Plaintiff, Malibu Media, LLC, is a purveyor of internet pornography. Consistent with its moral bent, Malibu Media also generates profit from "what is essentially an extortion scheme", *Malibu Media, LLC v John Does 1 through 10*, 2:12-cv-3623; 2012 WL 5382304, 2 (CD Cal,2012) (**Exhibit A**), in which it files suits, such as this one, alleging that a certain IP address has infringed upon its "copyrighted" obscene material, serves a subpoena on the internet provider for the IP address, and extracts a settlement from the owner of the IP address, who is willing to pay rather than have his or her name tied to such alleged conduct, whether responsible or not. Plaintiff has had such a subpoena issued from this Court in this case and served upon Comcast's Legal Response Center located in Moorestown, New Jersey, commanding Comcast to produce the requested information in Bloomfield Hills, Michigan.

Defendant lives in a college town in a shared residential setting with common walls in close proximity to many other people and uses a wireless router to access the internet. Thus, at any time, any person within the range of the router corresponding to Defendant's IP address

could access the Internet through Defendant's IP address. Defendant now seeks to have the subpoena quashed.

**ARGUMENT**

**PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE.**

**Obscene materials are not afforded copyright protections.**

A plaintiff in a copyright infringement case who seeks discovery to uncover the identity of an unknown "John Doe" defendant must make "a *concrete* showing of a prima facie claim of copyright infringement." *Sony Music Entertainment Inc v Does 1-40*, 326 F.Supp.2d 556, 564-65 (SD NY,2004) (emphasis added). There must be "a real evidentiary basis for believing that *the defendant* has engaged in wrongful conduct that has caused real harm to the interests of the plaintiff." *Highfields Capital Management, LP v Doe*, 385 F.Supp.2d 969, 970-971 (ND Cal,2005) (emphasis supplied). "[P]laintiff must make some showing that an act giving rise to civil liability actually occurred". *Columbia Ins Co v Seescandy.com,* 185 F.R.D. 573, 580 (ND Cal,1999).

There are two essential elements of a copyright infringement action: 1) that the plaintiff owned a copyrighted work, and 2) that the defendant copied it. *Kohus v Mariol*, 328 F.3rd 848, 853 (6th Cir,2003). Here, Plaintiff cannot establish the first element because pornography is not capable of being copyrighted.

The videos John Doe is alleged to have copied are hard core pornography bereft of any meaningful plot or dialogue. That is no doubt that the average person, applying contemporary community standards' would find that the videos, taken as a whole, appeal to the prurient interest, that the videos depict sexual conduct in a patently offensive way and that these videos, individually and collectively, lack any serious literary, artistic, political, or scientific value. In a

word, the videos are obscene. *Miller v California,* 413 U.S. 15, 24; 93 S.Ct. 2607; 37 L.Ed.2d 419 (1973). As the admitted maker and distributor of these videos, Malibu Media is violating 18 U.S.C. § 1466, which makes it a felony to engage in the business of producing with intent to distribute or sell, or selling or transferring obscene matter in interstate commerce. Consequently, the videos for which Malibu Media so "zealously" seeks to protect its copyright are not only obscene, but illegal.

Illegal and immoral works have no right to legal protections under an ancient common law doctrine stretching back to 19th century England and the Rule in Priestley's Case. Indeed, obscene works were not extended copyright protections when the first U.S. copyright law took effect in 1790. See Copyright Act of 1790, ch. 15, 1 Stat. 124. In enacting the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*., Congress did nothing to change the state of the law. In fact, Congress never addressed the issue of providing copyright protection for obscene works in any legislative history, in any legislative hearings, nor in any amendment to the Copyright Act. The Act is most certainly <u>not</u> made expressly applicable to obscene material. "It is a well-established principle of statutory construction that '[t]he common law ... ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose.' " *Fairfax's Devisee v Hunter's Lessee,* 11 U.S. (7 Cranch) 603, 623; 3 L.Ed. 453 (1812)." *Norfolk Redevelopment and Housing Authority v Chesapeake and Potomac Telephone Co of Virginia*, 464 U.S. 30, 35-36; 104 S.Ct. 304, 307 (1983).

Moreover, the Intellectual Property Clause of the U.S. Constitution authorizes copyright protections only to the extent that works promote the progress of science and the useful arts. U.S. Const. Art. I, § 8, cl. 8. The obscene material produced by Plaintiff does nothing to promote science or any useful art.

Finally, in order for a work to be protected under the Copyright Act, it must be "original". "Not all 'copying' is actionable, however: it is a constitutional requirement that a plaintiff bringing an infringement claim must prove 'copying of constituent elements of the work *that are original.*' " *Kohus v Mariol*, 328 F.3d 848, 853 (6th Cir,2003), quoting *Feist Publ'ns, Inc v Rural Tel Serv Co,* 499 U.S. 340, 361; 111 S.Ct. 1282; 113 L.Ed.2d 358 (1991) (emphasis in original). In *Feist* at 345, the Supreme Court provided the following definition: "Original, as the term is used in copyright, means … that it possesses at least some minimal degree of creativity." The obscene material regurgitated by Plaintiff possesses not a scintilla of any degree of creativity, whatsoever. None.

Defendant is aware that two circuits that have held that obscenity is not a defense to a claim of copyright violation. However, for the reasons stated above, those cases were wrongly decided. Moreover, as stated by District Judge Martin in denying injunctive relief under the Copyright Act:

> It is far from clear that the Second Circuit will follow the Fifth and Ninth Circuits in rejecting the argument that obscene material is entitled to copyright protection. ... It strains credulity that Congress intended to extend the protection of the copyright law to contraband. Moreover, the principal argument relied on by the Fifth and Ninth Circuits in rejecting the obscenity defense is that requiring the Copyright Office to decide whether a work is obscene might inhibit protected speech. While such a system might amount to a prohibited prior restraint, the considerations are completely different when the matter reaches the courts and a judicial determination that the material is obscene can be made. See *Alexander* 509 U.S. at 552; 113 S.Ct. at 2772, *citing Fort Wayne Books v Indiana,* 489 U.S. 46, 66; 109 S.Ct. 916, 929; 103 L.Ed.2d 34 (1989). Once a court has determined that copyrighted material is obscene, there seems no reason to require it to expend its resources on behalf of a plaintiff who it could as readily be trying for a violation of the federal criminal law.

*Devils Films, Inc v Nectar Video*, 29 F.Supp.2d 174, 176 (SD NY,1998).

Similarly, it is far from clear that the Sixth Circuit would follow the Fifth and Ninth Circuits. Obscene material did not have copyright protections at common law and Congress has

5

not clearly and explicitly repealed the applicable common law. Plaintiff simply cannot establish a prima facie case of copyright infringement, concrete or otherwise, because the materials alleged to have been copied by John Doe are not provided with copyright protections.

**Even if pornography was copyrightable, Plaintiff has not established a prima facie case.**

Even if this Court were to follow the Fifth and Ninth Circuits, Plaintiff has not made a prima facie showing sufficient to establish the second element, that John Doe infringed Plaintiff's purported copyrights. Based upon its own pleading, paragraph 24 of the Complaint, Plaintiff can only contend that, "Defendant is the most likely infringer", but nevertheless makes the leap and "alleges Defendant is the infringer". Plaintiff further acknowledges, however, that "Defendant is the only person who can be identified as the infringer at this time." ¶ 25. Inherent in Plaintiff's equivocal allegations is that Defendant may not be the infringer. Plaintiff effectively admits that its assumption that the person (Defendant) who pays for internet access at a given location (i.e., IP address) is the same individual who allegedly downloaded (i.e., copied) the videos is merely speculative.

As recently stated in *In re BitTorrent Adult Film Copyright Infringement Cases*, Civil Action Nos. 11–3995, 12–1147, 12–1150, and 12–1154; 2012 WL 1570765, 3-4 (ED NY,2012) (Attached as **Exhibit B**):

> If you only connect one computer to the Internet, that computer can use the address from your ISP. Many homes today, though, use routers to share a single Internet connection between multiple computers. Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms. If you use a router to share an Internet connection, the router gets the IP address issued directly from the ISP. Then, it creates and manages a subnet for all the computers connected to that router.
>
> Thus, *it is no more likely that the subscriber to an IP address carried out a particular computer function*—here the purported illegal downloading of a single pornographic film—*than to say an individual who pays the telephone bill made a specific telephone call*.

> Indeed, due to the increasingly popularity of wireless routers, *it is much less likely*. While a decade ago, home wireless networks were nearly non-existent, 61% of U.S. homes now have wireless access. Several of the ISPs at issue in this case provide a complimentary wireless router as part of Internet service. As a result, a single IP address usually supports multiple computer devices—which unlike traditional telephones can be operated simultaneously by different individuals. *See U.S. v Latham,* 2007 WL 4563459, at *4 (D.Nev, Dec.18, 2007). Different family members, or even visitors, could have performed the alleged downloads. Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film. As one court noted:

> In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connected to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router signal strength could be increased beyond 600 feet if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass this security using publicly available software. (Emphasis supplied).

Since it is "no more likely", in fact, "much less likely" that Defendant, rather than someone else utilizing the same IP address, performed the alleged infringements in question, Plaintiff has not established a prima facie case by a preponderance of the evidence, much less made a concrete showing. "By definition, failure to establish a prima facie case means that the plaintiff has failed to proffer proof sufficient to impose even a burden of rebuttal on the defendant. *Texas Dept. of Community Affairs v Burdine,* 450 U.S. at 253-54; 101 S.Ct. at 1093-94." *Pace v Southern Ry System*, 701 F.2d 1383, 1391 (11th Cir, 1983).

See also, *VPR Internationale v Does 1-1017*, 2011 WL 8179128, 2 (CD Ill,2011) (**Exhibit C**):

> Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect, as illustrated in the MSNBC article. The

7

> infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.
>
> … In *Hard Drive Productions, Inc. v Does 1–1000,* counsel sought leave to dismiss more than 100 Doe defendants, stating that some of the Does had "reached a mutually satisfactory resolution of their differences" with the plaintiff. *Hard Drive,* Case No. 1:10–cv–05606, d/e 33 (ND Ill). Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect." Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case.

And *Malibu Media, LLC v John Does 1 through 10*, *supra* (**Exhibit A**):

> [T]he subscriber may not be the actual infringer. For instance, a person may be the subscriber, but his roommate is the actual infringer. And the subscriber may have his home network configured to allow visitors, including strangers, to access the Internet—and use BitTorrent. ...
>
> [T]he potential for abuse is very high. The infringed work is a pornographic film. To save himself from embarrassment, even if he is not the infringer, the subscriber will very likely pay the settlement price.

Plaintiff has not made a concrete showing, indeed, has not made any satisfactory showing, to establish that this Defendant has infringed any purported copyright. The subpoena should be quashed.

**The subpoena is invalid on its face.**

Regardless of the substantive merit, or lack thereof, of Plaintiff's claim, the subpoena is not valid in any event. As noted above, the subpoena was issued by the Western District of Michigan and served upon a non-party in New Jersey, commanding production of the information to a location in the Eastern District of Michigan.

Rule 45(b) (2) states, in relevant part:

(b) Service.

\* \* \*

(2) Service in the United States. Subject to Rule 45(c)(3)(A) (ii), a subpoena may be served at any place:

(A) within the district of the issuing court;

(B) outside the district court but within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection[.]

* * *

The subpoena at issue here was served was served in New Jersey, which is outside of the District and well over than 100 miles of the place specified for production, Bloomfield Hills, Michigan.  Consequently, service is improper and the subpoena must be quashed.

In addition, Rule 45(a)(2)(C) also applies to invalidate the subpoena because it requires that a subpoena should issue "from the court for the district where the production or inspection is to be made."  Here, production was commanded in the Eastern District of Michigan; therefore, the subpoena should have been issued on behalf of the Eastern District of Michigan. Plaintiff "attempted to issue a subpoena on behalf of this Court for production of documents in another district more than 100 miles away. This constitutes non-compliance with Rule 45 and warrants quashing the subpoena."  *Battle v Chicago Cycle, Inc*, No. 1:11MC61; 2012 WL 5500507, 4 (ND Ohio,2012)(**Exhibit D**).

The subpoena must be quashed.

                                            Respectfully Submitted,

                                            The Meisner Law Group, P.C.

                                                /s/  Daniel P. Feinberg
                                            Daniel P. Feinberg (P38356)
                                            Attorneys for Defendant